UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION,<br><br>Plaintiff(s),<br><br>v.<br><br>AEGIS COMPANY,<br><br>Defendant(s). | CASE NO. C24-01793-KKE<br><br>ORDER GRANTING DEFAULT JUDGMENT |

Plaintiff Pension Benefit Guaranty Corporation ("PBGC") moves for default judgment against Defendant Aegis Company ("Aegis"). Dkt. No. 7. PBGC seeks to enforce an administrative subpoena issued to Aegis. Dkt. No. 1 at 6.

For the reasons below, the Court grants PBGC's motion for default judgment. (Dkt. No. 7).

## I.  BACKGROUND

**A.    Statutory Framework**

PBGC is a wholly owned U.S. Government corporation established under 29 U.S.C. § 1302(a) within the Department of Labor. Dkt. No. 1 ¶ 1; *see* 29 U.S.C. § 1302. PBGC administers the pension plan termination insurance program under Title IV of the Employment Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1302. Congress established PBGC to (1) "encourage the continuation and maintenance of voluntary private pension plans for

ORDER GRANTING DEFAULT JUDGMENT - 1

the benefit of their participants"; (2) "provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries" under plans covered by Title IV of ERISA; and (3) maintain premiums at the lowest possible level. Dkt. No. 1 ¶ 3; 29 U.S.C. § 1302(a).

Under ERISA, PBGC retains the authority to "make such investigations as it deems necessary to enforce any provision of this subchapter or any rule or regulation thereunder." 29 U.S.C. § 1303(a). PBGC may "subpe[o]na witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the corporation deems relevant or material to the inquiry." *Id*. "In the case … refusal to obey a subpe[o]na issued to, any person, [PBGC] may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business[.]" § 1303(c).

**B.    Factual Background**

Aegis is a Washington corporation[1] that maintained the Aegis Company Cash Balance Plan (the "Pension Plan") for the benefit of its eligible employees since January 1, 2017. Dkt. No. 1 at ¶¶ 2, 11. The Pension Plan is a tax-qualified, defined benefit pension plan covered under Title IV of ERISA. *Id.* ¶ 12. Aegis is the administrator of the Pension Plan, as defined by 29 U.S.C. §§ 1002 and 1301. 29 U.S.C. §§ 1002(16)(A), 1301(a)(1). *Id.* ¶ 13. People Tech Group, Inc. ("PTG") is a Washington corporation and Aegis' governor. *Id.* ¶ 14.

In 2023, PBGC began investigating Aegis and the Pension Plan because Aegis failed to pay required pension plan premiums since 2020. Dkt. No. 1 ¶ 15. Aegis also did not file its required Form 5500 disclosures since 2019. *Id.* (citing 29 U.S.C. §§ 1024, 1306, 1307(a)).

---

[1] *See* February 5, 2025, Initial Report for Aegis Company, Washington Secretary of State, https://ccfs.sos.wa.gov.

ORDER GRANTING DEFAULT JUDGMENT - 2

In March 2023, PBGC sent Aegis a letter requesting Aegis provide information and documents relating to the Pension Plan and Aegis's financial condition. Dkt. No. 1 ¶ 16. Throughout 2023, PBGC made several attempts to contact Aegis, but received "no response or limited responses from Aegis representatives by phone and email." *Id.* ¶ 17.

In February 2024, PBGC again requested information and documents on the Pension Plan and Aegis' financial state. Dkt. No. 1 ¶ 18. Aegis did not respond. *Id.* On March 27, 2024, PBGC issued an administrative subpoena to Aegis under 29 U.S.C. § 1303(b), directing Aegis to comply with PBGC's request by April 12, 2024. *Id.* ¶ 19. PBGC served the subpoena on March 28, 2024. *Id.* ¶ 20.

PTG representatives contacted PBGC on April 8, 2024, to schedule a meeting about the Pension Plan, and the next day, Aegis' former president notified PBGC that he would gather responsive documentation, but requested an extended production deadline. Dkt. No. 1 ¶ 21. PBGC extended the deadline to April 19, 2024. *Id.* On April 10, 2024, PBGC spoke with Aegis' former president and other PTG employees, explaining the investigation leading up to the subpoena. *Id.* ¶ 22. PBGC did not receive the responsive documentation by the extended deadline. *Id.*

On May 1, 2024, Aegis requested an extension to May 15, 2024, to respond. Dkt. No. 1 ¶ 23. Again, PBGC did not receive any responsive materials by that date. *Id.* The next day, Aegis emailed a document to PBGC, which PBGC claims was not responsive to the subpoena. *Id.* ¶ 24. PBGC alleges that Aegis failed to timely comply with the subpoena and has still not responded to PBGC's requests. *Id.* ¶ 25.

C.  **Procedural Background**

Pursuant to § 1303(c), PBGC filed a petition in this Court on October 31, 2024. Dkt. No. 1. On November 18, 2024, PBGC properly served Aegis with the summons, petition, and supporting documents. Dkt. No. 4. PBGC moved for entry of default against Aegis on December

ORDER GRANTING DEFAULT JUDGMENT - 3

12, 2024. Dkt. No. 5. Default was entered the next day. Dkt. No. 6. On January 8, 2025, PBGC moved for default judgment. Dkt. No. 7.

## II. DEFAULT JUDGMENT STANDARD

While courts generally prefer to decide cases "upon their merits whenever reasonably possible," the court has discretion to grant default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). At the default judgment stage, the court "takes the well-pleaded factual allegations in the complaint," except for those related to damages, "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)) (cleaned up); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267. When considering whether to exercise discretion in entering default judgments, courts may consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure.

*Eitel*, 782 F.2d at 1471–72. This District also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought" and other documentation depending on the relief sought. Local Rules W.D. Wash. LCR 55(b)(2).

"Generally, default judgment is a two-step process: first, the court determines that a default judgment should be entered; then, it determines the amount and character of the relief that should be awarded." *Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, No. C22-0825JLR, 2023 WL 3269759, at *3 (W.D. Wash. May 5, 2023) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18

ORDER GRANTING DEFAULT JUDGMENT - 4

(9th Cir. 1987)).  If the Court finds that Plaintiffs have established Defendant's liability, it must ensure that the amount of damages is reasonable and demonstrated by Plaintiffs' evidence.  Fed. R. Civ. P. 55(b)(2); LCR 55(b)(2).

### III.  ANALYSIS

**A.     The Court Has Jurisdiction Over This Matter.**

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction.  *See Cheddar Creations, Inc. v. Pawico*, No. 2:20-CV-01768-LK, 2024 WL 1346856, at *2 (W.D. Wash. Mar. 31, 2024); *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (stating that the district court has an "affirmative duty to look into its jurisdiction over both the subject matter and the parties" prior to entry of default judgment).

The Court has jurisdiction over PBGC's action under  29 U.S.C. §§ 1303(c) and (e)(3).  PBGC alleges that Aegis is a Washington corporation, and provides a record from the Washington Secretary of State showing that Aegis maintains its principal office 18300 Redmond Way, Suite 210, Redmond, WA 98052-5183.  Dkt. No. 1 ¶  2, Dkt. No. 1-3.  As such, PBGC has shown that Aegis "resides or carries on business" within the Court's jurisdiction, and the Court has authority to adjudicate this matter under 29 U.S.C. § 1303(c).

**B.     The *Eitel* Factors Favor Default Judgment.**

   1. <u>Possibility of Prejudice to PBGC</u>

The first *Eitel* factor—prejudice to PBGC—weighs in favor of default judgment because PBGC has no other recourse for recovery if the motion is not granted and Aegis continues to be non-responsive.  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("On a motion for default judgment, 'prejudice' exists where the plaintiff has no 'recourse for recovery' other than default judgment.").

2. <u>Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint</u>

The second and third *Eitel* factors—the merits of the claims and sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *5 (D. Ariz. Mar. 27, 2020). "The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors." *Federal Nat. Mortg. Ass'n v. George*, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015). When a complaint sufficiently states a claim for relief, then the second and third *Eitel* factors favor default judgment. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978).

Here, PBGC requests the Court enforce an administrative subpoena. The Ninth Circuit has provided the following guidance:

> The scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation.

*E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009). "If the charge is proper and the material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 77 (2017), *as revised* (Apr. 3, 2017). Taking the allegations in PBGC's petition as true, PBGC sufficiently stated a cause of action to enforce the administrative subpoena issued to Aegis.

*(i) Authority to investigate*

The Court finds that Congress granted PBGC authority to investigate. Section 1303(a) provides that PBGC conduct investigations "to enforce any provision of this subchapter or any

ORDER GRANTING DEFAULT JUDGMENT - 6

rule or regulation thereunder, and may require or permit any person to file with it a statement in writing, under oath or otherwise as [PBGC] shall determine, as to all the facts and circumstances concerning the matter to be investigated." 29 U.S.C. § 1303(a).  Moreover, the statute states that

> For the purpose of any such investigation, or any other proceeding under this subchapter, the Director, any member of the board of directors of [PBGC], or any officer designated by the Director or chairman, may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which [PBGC] deems relevant or material to the inquiry.

29 U.S.C. § 1303(b).  As such, PBGC holds the authority to investigate Aegis' failure to pay required pension plan premiums and file mandatory disclosures, and to issue subpoenas to complete its investigation.

        (ii)     *Procedural requirements*

Any applicable procedural requirements have been followed in this case.  ERISA's plain text does not impose any procedural requirements on the manner in which PBGC conducts investigations or issues subpoenas.  However, "[i]n pursuing this matter, PBGC has proceeded in accordance with due process of law and the orderly administration of justice." *Pension Benefit Guar. Corp. v. Panache Destination Mgmt.*, No. 21-MC-80147-TSH, 2021 WL 5043118, at *3 (N.D. Cal. Sept. 10, 2021).  PBGC provided 14 days to respond to its subpoena, which would be a sufficient time to respond if the subpoena was issued by a federal court in a lawsuit.  *See* Fed. R. Civ. Proc. 45(d)(2)(B).  To show that this Court retains jurisdiction over Aegis per 29 U.S.C. § 1303(c), PBGC provided a record from the Washington Secretary of State showing that Aegis is an active Washington corporation whose address on file with the Secretary is in Redmond, Washington.  And in moving for default, PBGC properly served Aegis.

ORDER GRANTING DEFAULT JUDGMENT - 7

*(iii) Relevance and materiality of the evidence sought*

PBGC's 14 document requests included in the subpoena generally relate to PBGC's investigation. Dkt. No. 1-6 at 7. However, because of the lack of adversarial briefing on the relevance of each request and given PBGC's limited account of its investigation, the Court cannot conclusively decide whether every one of these document requests is relevant and material.

That said, "courts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *E.E.O.C. v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001). None of PBGC's document requests fall below this low standard, and thus, PBGC has satisfied all three prongs of the Ninth Circuit's test.

Accordingly, PBGC sufficiently stated a cause of action to enforce the administrative subpoena issued to Aegis.

3. <u>Sum of Money at Stake</u>

*Eitel*'s fourth factor requires the Court to consider "whether the amount of money requested is proportional to the harm caused." *Sun Life Assurance Co. of Canada v. Est. of Wheeler*, Case No. C19-0364-JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020). PBGC does not seek a monetary award, and as such, this factor does not weigh against default judgment.

4. <u>Possibility of Disputed Material Facts</u>

The fifth *Eitel* factor—the possibility of dispute over material facts—also favors entry of default judgment. Generally, after "default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Illumination Arts*, 33 F. Supp. 3d at 1212.

ORDER GRANTING DEFAULT JUDGMENT - 8

5. <u>Whether the Default Was Due to Excusable Neglect</u>

The sixth *Eitel* factor—whether default may have been the product of excusable neglect—weighs in favor of default judgment here. In the default judgment context, there is no excusable neglect where a defendant is "properly served with the Complaint, the notice of entry of default, and the papers in support of the default judgment motion." *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 358412, at *5 (W.D. Wash. Jan. 31, 2014) (cleaned up).

6. <u>Policy Underlying the Federal Rules of Civil Procedure</u>

The seventh *Eitel* factor—the policy favoring resolution of disputes via contested litigation—weighs against entry of default judgment. This factor is outweighed by the other factors, however, and default judgment is not precluded based on this policy. *See Empl. Painters' Trust v. Dahl Constr. Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591, at *4 (W.D. Wash. July 6, 2020) (finding "that in instances where a defendant's failure to appear makes a decision on the merits 'impractical, if not impossible,' any preference for deciding cases on the merits 'does not preclude a court from granting default judgment.'") (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

### IV. CONCLUSION

For the above reasons, the Court GRANTS PBGC's motion for default judgment (Dkt. No. 7). The Court further ORDERS Aegis to produce any and all documents and records responsive to the subpoena to PBGC within 30 days of this order.

Dated this 25th day of February, 2025.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING DEFAULT JUDGMENT - 9